*To Be Argued By Michael H. Sussman*

# 14-1757-cv

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

-------------------------------------------------

THOMAS CORCORAN III, ALFRED & KERSTIN D. VOTTA, on behalf of
their minor sons R.V. and J.V., DYLAN WEST, DOMINIC SANTORA, JIMMY
FARRET,

*Plaintiffs-Appellants,*

v.

RICHARD WARD, RAY CASTELLANI, and MARLBORO CENTRAL
SCHOOL DISTRICT,

*Defendants-Appellees.*

-------------------------------------------------

**On Appeal from an Order and Judgment of the
United States District Court for the Northern District of New York**

---

### APPELLANT'S BRIEF-IN-CHIEF

---

Michael H. Sussman
SUSSMAN & WATKINS
P.O. Box 1005
1 Railroad Avenue, Ste. 3
Goshen, New York 10924
*Attorneys for Plaintiffs-Appellants*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………... iii

PRELIMINARY STATEMENT…………………………………….. 1

STATEMENT OF JURISDICTION…………………………….......... 2

STATEMENT OF ISSUES PRESENTED………………………….. 3

STATEMENT OF THE CASE…………………………………….... 3

STATEMENT OF FACTS…………………………………………. 6

    A. The Parties…………………………………………………. 6

    B. Ward's Egregious Conduct…………………………………. 8

        1. Ward instructed his players to injure others……………………. 8

        2. Ward's verbal and physical abuse of Appellants……………….. 9

        3. Ward's verbal and physical abuse of his players……………….. 12

    C. Appellants' notice to Ward, Castellani and School District concerning Ward's highly abusive and despicable behavior……….. 14

SUMMARY OF ARGUMENT…………………………………….... 20

STANDARD OF REVIEW…………………………………………. 21

ARGUMENT…………………………………………………….... 23

POINT I
THE DISTRICT COURT ERRED IN HOLDING, AS A MATTER OF LAW, THAT WARD'S CONDUCT WAS NOT CONSCIENCE SHOCKING AND, THUS, THAT APPELLANTS FAILED TO STATE A SUBSTANTIVE DUE PROCESS CLAIM…………………………. 23

i

CONCLUSION…………………………………………………………  38

CERTIFICATE OF COMPLIANCE………………………………...  39

`

# TABLE OF AUTHORITIES

<u>**Cases**</u>

<u>Ashcroft v. Iqbal,</u>
   129 S.Ct. 1937 (2009)……………………………………………………...   22

<u>Bell Atlantic Corp. v. Twombly,</u>
   550 U.S. 544 (2007)……………………………………………………..   22

<u>Betts v. Brady,</u>
   316 U.S. 455 (1942)……………………………………………………..   25

<u>Bisagnano v. Harrison Central School District,</u>
   113 F.Supp.2d 591 (S.D.N.Y. 2000)…………………………………….   33

<u>Bolmer v. Oliveira,</u>
   594 F.3d 134 (2d Cir. 2010)…………………………………………….   27

<u>Camac v. The Long Beach City School District,</u>
   No. 09 CV 5309 (DRH) (ARL), 2011 WL 3030345 (E.D.N.Y.  Jul. 22, 2011)….   27

<u>County of Sacramento v. Lewis,</u>
   523 U.S. 833 (1998)……………………………………………   23, 24, 26, 27, 31, 36

<u>Demoret v. Zegarelli,</u>
   451 F.3d 140 (2d Cir. 2006)……………………………………………..   35

<u>Faccio v. Eggleston,</u>
   No. 10-CV-783, 2011 WL 3666588 (N.D.N.Y. Aug. 22, 2011)……………   29, 30

<u>Gideon v. Wainwright,</u>
   372 U.S. 335 (1963)……………………………………………………..   25

<u>Harris v. Forklift Systems, Inc.,</u>
   510 U.S. 17 (1993)……………………………………………………...   36

<u>JG v. Card,</u>
   No. 08 Civ. 5668 (KMW), 2009 WL 2986640 (S.D.N.Y. Sep. 17, 2009)……….   26

Johnson v. Newburgh Enlarged Central School District,
  239 F.3d 246 (2d Cir. 2001)……………………………………………  31, 32

Kaytor v. Electric Boat Corp.,
  609 F.3d 537 (2d Cir. 2010)……………………………………………..  37

Loving v. Virginia,
  388 U.S. 1 (1967)………………………………………………………..  35

Marisol A. v. Giuliani,
  929 F.Supp. 662 (S.D.N.Y. 1996)………………………………………  27

Perrin v. Canandaigua City School District,
  No. 08-CV-6153L, 2008 WL 5054241 (W.D.N.Y. Nov. 21, 2008)…………  33, 34

Rochin v. California,
  342 U.S. 165 (1952)……………………………………………………..  24

Selevan v. New York Thruway Authority,
  584 F.3d 82 (2d Cir. 2009)……………………………………………..  6, 21

Smith v. Half Hollow Hills Central School District,
  298 F.3d 168 (2d Cir. 2002)……………………………………………  30, 31

West v. Whitehead,
  No. 04-CV-9283 (KMK), 2008 WL 4201130 (S.D.N.Y. Sep. 11, 2008)………..  27

**Statutes**

28 U.S.C. § 1291……………………………………………………………  3

28 U.S.C. § 1331……………………………………………………………  2

28 U.S.C. § 1343(a) ………………………………………………………...  2

42 U.S.C. § 1983……………………………………………………………  2

42 U.S.C. § 1988……………………………………………………………  2

## <u>Federal Rules of Civil Procedure</u>

Fed. R. Civ. P. 12(b)(6)………………………………………………….. 3, 5, 21

## PRELIMINARY STATEMENT

The athletic director is a "cunt." You are a "pussy" and a "mother fucker." "Don't fuck up my world" and "don't let your asshole pucker up." "You're on thin ice mother fucker." You are all "pussies," "stop fucking up my world," "get your head out of your ass," "grow a set of balls." "I didn't fucking tell you to run that route . . . now sit down and get the fuck off my field." You "candy ass mother fuckers."

Though this reads like the script of an R-rated film, the likes of which we would not want our children to view, in fact, these quotes represent a sampling of the vulgarities Defendant-Appellee RICHARD WARD, as a high school football coach, relentlessly spewed at Plaintiff-Appellants THOMAS CORCORAN III, R.V., J.V., DYLAN WEST, DOMINIC SANTORA, JIMMY FARRET (collectively "Appellants")[1] over the course of several years during which they were members of Ward's team. This steady stream of obscenity formed the backdrop against which Ward systematically ridiculed, intimidated, morally degraded and physically

---

[1] Since R.V. and J.V. were minors at the time this instant action was commenced, they are not named plaintiffs-appellants, but rather, their parents Alfred and Kerstin D. Votta, who asserted their claims on their behalf, are. But for convenience, unless otherwise indicated, the reference to "Appellants" herein includes R.V. and J.V.

menaced Appellants, causing most of them to quit the team and subjecting all of them to significant psychological and emotional abuse.

Despite having notice of Ward's egregious behavior toward his student-athletes, all minors and in their formative years of development, Defendants-Appellees RAY CASTELLANI and MARLBORO CENTRAL SCHOOL DISTRICT (the "School District) (collectively, with Ward, "Appellees") failed to take any steps to discipline Ward or correct his behavior. To the contrary, they supported Ward, signaling to him that they condoned his behavior, and, ultimately, reappointed him head varsity football coach for the 2013 season.

Since Ward's years-long pattern of egregious conduct toward his players, including Appellants, as alleged in their well-pleaded complaint, shocks the conscience, the district court erred in dismissing the complaint and, thus, its decision, respectfully, should be reversed and vacated and the matter permitted to proceed to discovery.

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Appellants allege that Appellees violated their Fourteenth Amendment rights, as made actionable by 42 U.S.C. § 1983, and, thus, the district court below had subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343(a) and 42 U.S.C. §§ 1983 and 1988. On April 14, 2014, the district court

granted Appellees' motion to dismiss Appellants' complaint in its entirety and, on April 30, 2014, the Clerk entered final judgment dismissing the complaint. Appellants timely filed their Notice of Appeal on May 19, 2014. Thus, this Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED

1.  Whether the district court erred in holding that Ward's behavior as alleged in the complaint, as a matter of law, was not "conscious-shocking" and, thus, did not violate Appellants' substantive due process rights and, therefore, erred in granting Appellees' motion to dismiss for failure to state a claim.

2.  Whether the district court erred in refusing to consider Ward's conduct toward the football team generally and other players, as well as the hostile environment he created for Appellants, in determining whether Ward violated Appellants' substantive due process rights.

## STATEMENT OF THE CASE

This appeal arises from the district court's April 14, 2014 oral ruling (embodied by its April 30, 2014 Judgment) granting Appellees' motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Appellants' complaint for failure to state a claim upon which relief may be granted (See JA-47-63).

Appellants are former students of Marlboro High School and former members of the school's football team (JA-8-9 at ¶¶ 1-5). Appellee Ward is, and at all relevant

3

times was, the head coach of the Marlboro High School varsity football team (JA-9 at ¶ 6). Appellee Castellani is, and at all relevant times was, the Superintendent of Schools of appellee School District (Id. at ¶ 8).

Appellants commenced this action on December 3, 2013 in the District Court for the Northern District of New York (See JA-3, Dkt. No. 1; JA-8-27), alleging in their complaint that, during the 2011, 2012 and 2013 school years, Ward engaged in an egregious and disgusting pattern of physical, verbal and psychological abuse against them and other players (See JA-8-27 *passim*). The complaint outlines numerous instances of defendant Ward's unjustified pushing and shoving of plaintiffs, grabbing of their face masks, imposition of punitive disciplinary measures, screaming, yelling, use of vulgar profanity and racist language and psychological abuse (See JA-10-23 *passim*).

The complaint alleges further that Appellants notified Castellani and School District of Ward's egregious behavior and that, despite that notice, these Appellees failed to take any corrective measures and, instead, reappointed Ward as coach for the 2013 football season (See JA-13 ¶¶ 30-32, JA-14 at ¶¶ 35-36, JA-15 at ¶¶ 41-42, JA-17-18 at ¶¶ 44(r)-44(s), JA-20-23 at ¶¶ 45-64). Appellants also allege that Ward's conduct toward them, as further informed and exacerbated by his treatment of the team and other players generally, was "conscious shocking," and, thus, his behavior constitutionally arbitrary and damaging to them (See JA-10-23 *passim*).

As such, they allege that Ward, by his conduct, violated their rights to Substantive Due Process under the Fourteenth Amendment to the United States Constitution as made actionable by 42 U.S.C. § 1983 (See JA-23-25 at ¶¶ 66-71.

Moreover, the complaint alleges that Castellani and School District, by affirmatively supporting Ward and taking no corrective measures despite their knowledge of his egregious conduct as set forth in the complaint and despite numerous complaints about the same, also violated Appellant's substantive due process rights (JA-25-26 at ¶¶ 72-73).

On January 17, 2014, Appellees moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim (JA-4, Dkt. No. 6; JA-44-46) and, on April 14, 2014, ruling from the bench, the district court (Hon. Thomas J. McAvoy, Senior Judge) granted Appellees' motion and dismissed Appellants' complaint in its entirety (JA-47-62).  The Clerk entered final judgment on April 30, 2014 (JA-63).

In dismissing the complaint, the district court noted that no Appellant alleged he was physically injured by Ward and that Ward's conduct toward them, while offensive and wrong, was not sufficiently conscience-shocking to establish a substantive due process claim (See JA-54-57).  Rejecting Appellants' analogy to hostile work environment claims, the district court also refused to consider Ward's

conduct toward the team generally and players other than Appellants in considering whether he violated Appellants' due process rights (See JA-58-59).

Finally, since Appellants' claims against Castellani and the School District were tied to Ward's conduct, which the court found did not violate Appellants' constitutional rights, the district court dismissed Appellants' supervisory and Monell claims against Castellani and the School District without addressing the merits of either claim and, for the same reason, did not address Ward and Castellani's qualified immunity arguments (See JA-58-61). Appellants timely filed their Notice of Appeal on May 19, 2014 (JA-64).

## STATEMENT OF FACTS[2]

### A. **The Parties**

Appellant Thomas Corcoran III is a resident of the Town of Marlboro and of legal age (JA-8 at ¶ 1). He graduated Marlboro High School in June 2013 (Id.). Appellants Alfred & Kerstin Votta are the parents of R.V. and J.V., student/athletes under the age of eighteen who currently attend the defendant Marlboro Central School District (JA-8 at ¶ 2). They bring this lawsuit on behalf of their two sons

---

[2] The factual allegations set forth herein are taken from Appellants' complaint and, for purposes of reviewing the district court's decision below, must be accepted as true and interpreted in the light most favorable to Appellants. See Selevan v. New York Thruway Authority, 584 F.3d 82, 88 (2d Cir. 2009) (quotations and citations omitted).

(Id.).  Appellant Dylan West is a resident of Milton, New York, within this judicial district and of legal age (JA-8 at ¶ 3.  He graduated from Marlboro High School in June 2013 (Id.).  Appellant Dominic Santora is a resident of Marlboro, New York, is of legal age and graduated from Marlboro High School in June 2013 (JA-9 at ¶ 4.) He was on the football team, coached by defendant Ward, during his senior year, the fall of 2012 (Id.).  Appellant Jimmy Farrett resides in Marlboro, New York within this judicial district and is of legal age (JA-9 at ¶ 5.  He graduated from Marlboro High School in June 2014 (Id.).

Appellee Richard Ward is the head football coach, employed on a year-to-year basis and at-will by the Marlboro Central School District (JA-9 at ¶ 6.  He works in this judicial district and has no entitlement to his position of football coach (JA-9 at ¶ 7.  Appellee Ray Castellani is the Superintendent of Schools of the Marlboro Central School District and has supervisory responsibility for the football coach (JA-9 at ¶ 8). He works in this judicial district (Id.).  Appellee School District is a municipal corporation organized pursuant to the laws of the State of New York and it may sue and be sued for constitutional torts of the sort alleged herein (JA-9 at ¶ 10).  It is governed by an elected school board, which hires the school superintendent, who is charged with administering the affairs of the district and implementing decisions made by the board (Id.).

7

**B. Ward's Egregious Conduct.**

1. Ward instructed his players to injure others.

The School District hired Ward to be its head football coach during the summer 2010 (JA-10 at ¶ 12). Starting his first season and continuing through the 2012 season, Ward instructed his players to intentionally and improperly injure identified opposing players (JA-10 at ¶ 13). Despite the language of the Marlboro Athletic Handbook which states under "Coaching Ethics," that "the duty of all concerned with high school athletics [is to] emphasize the proper ideals of sportsmanship, ethical conduct and fair play, eliminate all possibilities which tend to destroy the best values of the game, stress the values which derive from playing the game fairly, be courteous to visiting teams and official [and] establish a friendly relationship between visitors and hosts," Ward instructed his players to twist and break fingers and target the knees of opposing players with the purpose of injuring them (JA-10 at ¶ 14).

Specifically, in both the 2011 and 2012 seasons, Ward instructed his players, in the presence of R.V., J. V., West and Santora, amongst many others, to injure Kariff Laboy of New Paltz and Josh Riley of Spackenkill, two standout opponents (JA-11 at ¶ 15). J. V. also witnessed Ward target a player named "Clark" from New Paltz and a player with a knee brace from Croton-Harmon (JA-11 at ¶ 16). Before the 2011 game against New Paltz, Ward told his team that he wanted the opposing

team to "go out in body bags" (JA-11 at ¶ 17).  He also specifically targeted Matt Forte, a player for the Highland team, saying he wanted him in "a body bag" (JA-11 at ¶ 18).

Consistent with these directions, Ward congratulated players who struck opposing players viciously and said repeatedly, "I want to see more of that" (JA-11 at ¶ 19).  In a fall 2012 game, Ward ran onto the field and congratulated Brandon Curry after he struck an opposing player after the play ended (JA-11 at ¶ 20). Apprised of these directions and instructed by Ward to have younger players emulate such violent techniques, several lower level coaches stopped coaching in the Marlboro system (JA-11 at ¶ 22).

### 2. Ward's verbal and physical abuse of Appellants.

Apart from directing his players to use untoward violence against players from other teams, Ward intentionally perpetuated physical abuse against plaintiffs in violation of Rule 27(a)(2) of the Handbook of the New York State Public High School Athletic Association which unequivocally states that no coach "shall strike, shove, kick or make other physical contact with the intent to annoy, harass or intimidate another person (e.g., official, another coach, player, fan)" (JA-12 at ¶ 23). Such conduct created a hostile educational/playing environment for Appellants and their teammates, and, on the basis of this abuse, which was either directed at them or to other football players in their presence [as is set forth in greater detail below],

9

J.V., R.V., West and Corcoran, quit the football team, losing friendships and the opportunity to obtain football scholarships to college (JA-12 at ¶¶ 24, 28, JA 13 at ¶ 31, JA-19 at ¶ 44).

### i.    Appellant Thomas Corcoran.

In June 2011, defendant Ward violently grabbed Corcoran by the face mask, jerked his head, cursed at him and threw him off the football field (JA-12 at ¶ 25). When Corcoran asked what he had done wrong, Ward told him "shut the fuck up and sit the fuck down" (JA-12 at ¶ 26). Corcoran witnessed like abuse directed by Ward to other players, including West, M.B. and J.V. (JA-12 at ¶ 27). As a consequence of this conduct and similar conduct he saw toward other student/athletes, Corcoran quit playing football in the summer of 2011 (JA-12 at ¶ 28).

### ii.    Appellant Dominic Santora.

As Hurricane Sandy struck and at football practice, Ward told Santora to "get his fucking ass off the field" and then left him unsupervised in a parking lot, locked out of the high school and the locker room (JA-16 at ¶ 44(i)). Santora witnessed the physical and verbal abuse of numerous other student/athletes and this adversely affected his self-esteem, frightened him and caused him to stop playing organized football at the end of the 2012 season (JA-16 at ¶ 44(j)).

### iii.    Appellant Jimmy Farrett.

During the fall 2011, Ward threw Farrett off his "fucking" field and told him to go home because he did not have his helmet on (JA-17 at ¶ 44(l)).  On other occasions, during the same season, Ward verbally abused Farrett, calling him a "pussy and "mother fucker" and instructing him, "don't fuck up my world" and "don't let your asshole pucker up" (JA-17 at ¶ 44(m))

In Farrett's presence, Ward was both verbally and physically abusive to other players, repeatedly cursing, threatening players with physical violence and throwing water bottles and white boards during half-time (JA-17 at ¶ 44(n)).  Such behavior caused Farrett to feel humiliated, degraded and fearful and substantially diminished his enjoyment of his junior and senior seasons as a student/athlete (JA-17 at ¶ 44(o)).

### iv.    Appellant Dylan West

In the fall 2011, when West was a junior, Ward put him in at a position on offense with which West was not familiar (JA-15 at ¶ 44(c)).  Ward stated, "Get your head out of your ass, mother fucker" (Id.).  Moments later, as West was going back toward the huddle, Ward yelled at him, "I didn't fucking tell you to run that route [as he had, in fact, instructed West], now sit down and get the fuck off my field" (JA-16 at ¶ 44(d)).  This interaction "killed the game of football" for West; he hated going to practice or having any contact with Ward, who was perpetually abusive in his presence – toward him and other student/athletes (JA-16 at ¶ 44(e)).

11

v.    Appellant J.V.

During the early part of the 2011 season, Ward grabbed the face masks of J.V., jerked his neck and head toward him and screamed at them.

In the fall 2012, defendant Ward grabbed J.V. by the shoulder pads and aggressively shoved him (JA-14 at ¶ 37). In the fall of 2012, Ward called the female athletic director a "cunt" in the presence of J.V, who was only sixteen years old at the time (JA-17 at ¶ 44(k)). Ward also called J.V. "candy ass mother fucker" (JA-16 at 44(g)). On October 12, 2012, Ward screamed at J.V. so close to his face that he literally spit at and upon J.V. (JA-17 at ¶ 44(p)).

vi.    Appellant R.V.

The same day, October 12, 2012, defendant Ward treated J.V.'s brother, R.V., similarly, spitting at him and cursing him, stating, "You're on thin ice mother fucker" (JA-17 at ¶ 44(q)). In the fall 2012, in front of other players, defendant Ward called Larry Cavazza, the Vs' uncle, a "worm," while he attempted to fix the stadium lights (JA-19 at ¶ 44(t)).

3. Ward's verbal and physical abuse of his players.

In the fall 2012, defendant Ward forced certain players he disliked, namely K.H. and J. G., to run laps for as many as three consecutive hours without a break. Defendant Ward also forced players, like J.G., to play through serious injury, such as a sprained ankle (JA-14 at ¶ 38).

12

At half-times during games, Ward would typically lose his temper, throw water bottles and white boards, kick water bottles so hard his own shoe would fly off and use ongoing profanity (JA-15 at ¶ 44(a)).  On one occasion, Ward told a player, M.T. that if he jumped off-side one more time he was going to rip his "fucking face off" (JA-15 at ¶ 44(b)).  On another occasion, Ward called M. B. a "pussy" in front of other players (JA-16 at ¶ 44(h)).

Apart from physically abusing players, Ward verbally abused his players, calling them "pussies," yelling "stop fucking up my world," "get your head out of your ass," "grow a set of balls" and other profanity on a regular basis (JA-14 at ¶ 40).  After seeking out the mother of an African-American player, T.H., so she could sign off on his son playing despite a concussion, in front of many of his players, including several plaintiffs, defendant Ward mocked Mrs. H.'s accent and then said with reference to her son, "I will run that nigger into the ground" (JA-16 at ¶ 44(f)).

In front of other players, including several of the Appellants, Ward constantly ridiculed M.B. for his weight (JA-19 at ¶ 44(u)).  Ward cursed out R.S. for leaving weight-lifting for a family commitment and then, calling him a "pussy" and kicked him off the football team because of conflicts with another sport (JA-19 at ¶ 4(v)).  Ward told J.G. that he was really "not a part of the team" after J.G. attended every practice (JA-19 at ¶ 44(w)).  He also made J.G. serve as a water boy for two days at

practice, attempting to humiliate him (Id.).   When J.G.'s parents complained, defendant Ward told them that he had decided to make their son "an example" (Id.).

### C. **Appellants' notice to Wad, Castellani and School District concerning Ward's highly abusive and despicable behavior.**

Having witnessed the above-described abuse of his sons by Ward, Appellant Alfred Votta asked Athletic Director Jonnah O'Donnell to do something to protect them (JA-17 at ¶ 44(r)).  Specifically, after the October 12, 2012 game was over, AD O'Donnell approached the Vs and told them that her heart broke for their sons because she saw Ward abuse both of them (Id.).  She related that when she was in college, she had a coach like Ward for basketball and quit the team and never played again because of the coach (Id.). She assured the Vs that she would talk with Ward on Monday morning. She failed to take any action (Id.).

Following this incident, on Monday, October 15, 2012, Kerstin Votta called the School Superintendent and made an appointment to see him (JA-18 at ¶ 44(s)). When she arrived for the meeting, defendant Castellani's secretary told her that he was in another meeting and she would have to re-schedule (Id.).  Mrs. Votta refused to leave and eventually met with the Superintendent who advised her that for every one parent who complained about Ward, ten parents provided positive feedback (Id.).  Mrs. Votta explained that Ward had told her son R.V., "you're on thin ice mother fucker" (Id.).

Defendant Castellani replied that while this was a fireable offense, it was not enough to cause him to take any action (Id.). Mrs. Votta complained about the verbal abuse to which Ward had subjected her sons (Id.). Castellani replied that if Mrs. Votta went to any high school football game, she would see similar yelling (Id.). Mrs. Votta advocated for the removal of the football coach, but the Superintendent told her this demand was unrealistic (Id.).

Despite numerous complaints made by Appellants, other parents and their counsel, the School District failed to take any meaningful action to curb the physical and verbal abuse engaged in by Ward and this failure has made it possible for him to continue said abusive conduct (JA-20 at ¶ 45). Corcoran's father and school board member Lawrence Cavazza complained directly to defendant Ward about his profanity, but Ward responded that he was not going to change his coaching style and stated that his team practices should be closed to the public (JA-15 at ¶ 41).

Corcoran reported the abuse to which he was subjected to his parents and to Athletic Director O'Donnell, who took no action curb the obvious excesses of defendant Ward (JA-13 at ¶ 29). In August 2011, Corcoran's father met with the Assistant Superintendent and Castellani to report his concern about the abuse to which Ward had subjected his son and other student/athletes (JA-13 at ¶ 30). The same month – August 2011 – Corcoran's father also met with the Athletic Director, the Superintendent of Schools and Ward to complain about the treatment Ward had

15

directed toward his son (JA-20 at ¶ 46). Following the meeting, neither Castellani nor the school district took any remedial or curative action (JA-20 at ¶ 47).

While Corcoran would have liked to resume playing high school football, he did not feel doing so was safe in light of the School District to respond to the complaints he and his father had made to Castellani (JA-13 at ¶ 31). During the football game against Lourdes in the fall of 2012, Ward grabbed and jerked Ryan Cary's head by his face mask (JA-13 at ¶ 34). This was done in the presence of other team members and witnessed by parents, including Alfred Votta and School Board President Stephen Jennison (Id.).

When Alfred Votta complained about Ward's behavior to School Board President Jennison, also an eyewitness to defendant Ward's action, Jennison told Votta that his coach had behaved in a similar manner when he was a high school football player (JA-14 at ¶ 35). When Corcoran's father called him to complain about the same incident, Board President Jennison repeated the same remark and failed to raise the issue of Ward's abusive conduct with the school board or seek any disciplinary action against Ward (JA-14 at ¶ 36).

After the 2012 football season ended, the Vs again complained to AD O'Donnell about Ward's treatment of their sons (JA-20 at ¶ 48). AD O'Donnell invited J.V. and R.V. to her office and, there, they wrote a letter outlining their

concerns (JA-20 at ¶ 49).  After the students did write and submit this letter, they heard nothing from the district or defendants Castellani or Ward (JA-20 at ¶ 50).

On January 28, 2013, Appellants' counsel wrote the School District, Castellani, O'Donnell and Ward and complained about the physical and verbal abuse to which Ward had subjected players on his team, including the Appellants (JA-20 at ¶ 51).  Appellees failed to respond to the Sussman letter or other notice letters he wrote them (JA-21 at ¶ 52).

On February 7, 2013, Mrs. V. sent an email complaining about Ward to the athletic director (JA-21 at ¶ 53).  Eleven days later, Ward sent an email to all members of the football team, excluding the V family, indicating that one family associated with the team had requested his resignation and disclaiming any responsibility for physically or verbally abusive conduct and, instead, claiming that as group of parents had fabricated stories about him and boasting that he would continue as head football coach (JA-21 at ¶ 54).

In early March 2013, the Vs told an investigator appointed by the school district most of the afore-cited allegations concerning the abuse suffered by their sons and other students/athletes (JA-21 ¶ 55).  An internal investigation conducted by the School District confirmed that Ward had abused plaintiff Corcoran as related above, but Castellani and district failed to discipline Ward for this behavior (JA-13 at ¶ 32).

On March 18, 2013, the school district released an internal investigation which claimed that the charges of harassment were unfounded (JA-21 at ¶ 56). While conceding that defendant Ward used profanity, the report concluded that his behavior did not rise to the level of harassment (Id.).

Despite the numerous reports of abuse and the abuse witnessed by district administrators or school board members themselves, Castellani and the School District re-appointed Ward as head football coach for the 2013 football season (JA-21 at ¶ 57). This action reasonably signaled defendant Ward that his abusive behavior was condoned and permitted, denoting district custom and practice (JA-22 at ¶ 58). This action also caused plaintiffs R.V., J.V. and other players not to participate in football and to disqualify themselves for consideration for scholarships for which they likely would have qualified had they participated (JA-22 at ¶ 59).

The substantial abuse engaged in by Ward and approved and thereby condoned and facilitated by Castellani and the School District caused each plaintiff substantial mental suffering, humiliation and emotional anguish (JA-22 at ¶ 60). The conduct of Ward was knowingly malicious and his letter to the football community of February 2013 was materially false, attempting to blame others for his own out-of-control behavior and to further isolate student/athletes, including the plaintiffs, and their families who tried to put an end to his abusive and unprofessional behavior (JA-22 at ¶ 61).

Castellani had full knowledge of the abusive conduct of Ward and a duty to dismiss him as head football coach so as to protect the health and safety, physical and mental, of students under his care and custody (JA-22 at ¶ 62). He failed to do so for no good reason (Id.).

The School District, acting through its elected School Board, had full knowledge of Ward's abusive conduct and failed to dismiss him as head football coach (JA-23 at ¶ 63). It had no good reason for its condonation and facilitation of his abuses (Id.). By failing to discipline Ward despite the express conclusions of its Athletic Director and Superintendent that his behavior crossed the line and by, instead, re-appointing Ward annually as head football coach despite repetitive instances of reprehensible conduct which shocked the judicial conscience and had destroyed Appellants' enjoyment of the sport of football and diminished their opportunities for scholarships allowing them to forward their post-secondary educations, the School District adopted a policy, practice and custom of condoning and facilitating such conscience-shocking behavior through deliberate indifference and/or gross negligence (JA-23 at ¶ 64).

## SUMMARY OF ARGUMENT

The district court below erred in holding, as a matter of law, that Ward's conduct, as alleged in the complaint, was not sufficiently "conscience shocking" to constitute a violation of Appellants' substantive due proves rights. In particular, the district court erred in failing to view Appellants' claims under the totality of circumstances or to consider the prolonged and relentless nature of Ward's conduct. This error is evident not only from the district court's disaggregation of Appellants' claims into individual episodic events, but also by its reliance upon, and analogy to, cases dealing only with singular incidents as opposed to the pattern and practice of egregious behavior alleged here.

Relatedly, the district court also failed to properly review the alleged facts under the appropriate standard. Focusing primarily upon Appellant's claims of physical abuse and emphasizing that no Appellant was seriously physically injured, the district court, citing primarily excessive force cases, ignored the psychological abuse Ward inflicted upon Appellants and the constant state of fear and anxiety into which he thrust them by his behavior and actions.

Finally, the district court erred in rejecting Appellants' analogy to hostile work environment claims. The district court dismissed this argument out of hand on the ground that hostile work environment claims involve a different standard than substantive due process claims; yet it never even set forth or examined the hostile

20

work environment standard or explained, in sufficient detail, why analogizing to such claims would be incompatible with a review of Appellants' substantive due process claims.

But a proper examination reveals that the analysis employed in hostile work environment claims – both require the plaintiff to establish the objective egregiousness of a defendant's conduct under the totality of circumstances. To be sure, the threshold of egregiousness for establishing a claim is arguably higher in the substantive due process context than in the hostile work environment context such that adequately pleading a hostile work environment claim might not, *a fortiori*, state a substantive due process violation. But this fact does not diminish the value of the analysis employed in evaluating the claims.

Since the district court erred in all of the foregoing respects, this Court, respectfully, should reverse and vacates its judgment dismissing the complaint and remand the matter to proceed to discovery.

## STANDARD OF REVIEW

This Court reviews the district court's dismissal of Appellant's complaint *de novo*. See <u>Selevan v. New York Thruway Authority</u>, 584 F.3d 82, 88 (2d Cir. 2009). When reviewing a motion to dismiss for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6), the court must "construe plaintiffs'

complaint liberally, accepting all factual allegations . . . [as] true, and drawing all reasonable inferences in plaintiffs' favor." Id. (quotations and citations omitted).

The Court must determine whether the Complaint "state[s] a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). This inquiry is "context-specific" and "requires the reviewing court to draw on its judicial experience and common sense." See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009). Where the factual content of the pleading "allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged," the pleading "has facial plausibility." Id. at 1949.

"The plausibility standard is not akin to a 'probability requirement,'" see id. at 1949, and, in fact, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts [pleaded] is improbable, and that a recovery is very remote and unlikely." Twombly, 550 U.S. at 556 (quotations and citations omitted). Indeed, a pleading need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Iqbal, 129 S.Ct. at 1949. Ultimately, a pleading must allege facts that are more than "merely consistent with a defendant's liability." Id. If, accepting all well-pleaded factual allegations as true, the court determines that the complaint "plausibly give[s] rise to an entitlement to relief," see Iqbal, 129 S.Ct. at 1950, it must deny the motion.

22

# ARGUMENT

## POINT I

### THE DISTRICT COURT ERRED IN HOLDING, AS A MATTER OF LAW, THAT WARD'S CONDUCT WAS NOT CONSCIENCE SHOCKING AND, THUS, THAT APPELLANTS FAILED TO STATE A SUBSTANTIVE DUE PROCESS CLAIM.

Appellants' complaint alleges sufficient facts from which a reasonable jury could conclude that Ward's conduct was sufficiently conscience shocking as to violate Appellant's substantive due process rights.[3]  Accordingly, the district court's judgment dismissing their complaint should be reversed and vacated.

The substantive component of the Fourteenth Amendment's due process clause protects individuals from arbitrary governmental actions "regardless of the fairness of the procedures used to implement them." County of Sacramento v. Lewis, 523 U.S. 833, 840 (1998).  Not all arbitrary governmental actions violate due process, but "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." Id. at 846 (internal quotations and citations omitted).  The test for whether governmental conduct rises to the level of constitutional

---

[3] Since the district court did not address the merits of Appellants' claims against Castellani or the School District, but, instead, dismissed those claims solely on the basis of its decision that Ward's conduct did not violate Appellants' due process rights, only Appellants' claims against Ward need be, and will be, addressed herein.  In any event, the well pleaded complaint alleges sufficient facts establishing Castellani's and the School District's liability (See JA-13 ¶¶ 30-32, JA-14 at ¶¶ 35-36, JA-15 at ¶¶ 41-42, JA-17-18 at ¶¶ 44(r)-44(s), JA-20-23 at ¶¶ 45-64).

arbitrariness so as to violate due process is whether it "shocks the conscience." Id. (citing Rochin v. California, 342 U.S. 165, 172-73 (1952)).

"[T]he measure of what is conscience shocking is no calibrated yardstick," and the concept "duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability." Id. at 847-48. Thus, conduct that is merely negligent does not shock the conscience, while "conduct intended to injure in some way unjustifiable by any government interest . . . most likely rises[s] to the conscience shocking level." Id. at 849. Whether conduct falling in the middle of this spectrum (i.e., reckless or deliberately indifferent) shocks the conscience is a "closer question" and can support a substantive due process claim. See Id. at 849-50.

In evaluating a plaintiff's substantive due process claim, the Supreme Court's guidance in County of Sacramento, is instructive:

> The phrase due process of law formulates a concept less rigid and more fluid than those envisaged in other specific and particular provisions of the Bill of Rights. Its application is less a matter of rule. Asserted denial is to be tested by an appraisal of the totality of facts in a given case. That which may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may, in other circumstances, and in the light of other considerations, fall short of such denial.

Id. at 850 (quoting Betts v. Brady, 316 U.S. 455, 462 (1942), overruled by Gideon v. Wainwright, 372 U.S. 335 (1963)) (alterations accepted).    Thus, a proper evaluation requires a fact-intensive inquiry viewing the totality of the circumstances.

Here, the complaint details the level of physical, verbal and psychological abuse Appellants endured at the hands of Ward while members of his football squad. A tyrant in the guise of a coach, and acting pursuant to his governmental authority to oversee a public high school football team, Ward routinely subjected Appellants to his abusive behavior, verbally taunting and ridiculing them, physically menacing them, morally degrading them and placing them in a constant state of fear and intimidation.

His egregious behavior served no legitimate governmental purpose; indeed, his standing order, and more specific directives, to his team to intentionally and improperly injure opposing players explicitly violated the Marlboro Athletic Handbook's provisions for Coaching Ethics, as did his unjustified physical assaulting of Appellants and other players.  And his disgusting and degrading vulgar tirades and verbal abuse could not reasonably be understood to have any legitimate athletic or pedagogical value.  A reasonable jury could conclude that Ward's conduct and behavior were intended solely to ridicule, demean and intimidate – and, thus, to harm and injure – his players, including Appellants, and for no other legitimate

governmental purpose. Thus, it could find Ward's behavior conscience shocking and a violation of Appellant's substantive due process rights.

In holding, as a matter of law, that Ward's conduct, as alleged in the compliant, was insufficiently conscience shocking, the district court erred in several respects, not the least of which being that it usurped the jury's role in resolving the highly fact-intensive inquiry, see County of Sacramento, 523 U.S. at 850, arising from the well pleaded allegations of Appellant's complaint. See JG v. Card, No. 08 Civ. 5668 (KMW), 2009 WL 2986640, at *5 (S.D.N.Y. Sep. 17, 2009) ("Whether a defendant's conduct was so egregious as to 'shock the conscience' is a factual matter, inappropriate for decision on a motion to dismiss.").

But more fundamental are the district court's errors in evaluating the complaint to determine whether Ward's conduct shocks the conscience. At the core of the district court's holding is its conclusion that:

> In this case, Ward was a bully who used inappropriate language. He did not, however cause physical injury to any of the plaintiffs, did not engage in an extended physical attack on any of the plaintiffs and could always make at least an arguable claim that his methods were aimed at coaching football, not simply intended to inflict harm.

(JA-55). But this conclusion improperly imposed upon Appellants a burden of establishing significant physical harm or injury where no such burden exists. Indeed, while a defendant's behavior will most likely be found to be conscience shocking

26

when it is "intended to injure in some way unjustifiable by any government interest," see County of Sacramento, 523 U.S. at 849, the term "injure" is not restricted to only physical injury.

Rather, egregious and unjustified conduct intended to harm the plaintiff in other ways, such as psychologically or emotionally, may be sufficiently conscience shocking to implicate the Fourteenth Amendment. See, e.g., Bolmer v. Oliveira, 594 F.3d 134, 143-44 (2d Cir. 2010) ("[A] physician's decision to involuntarily commit a mentally ill person because he poses a danger to himself or others shocks the conscience, thereby violating substantive due process, when the decision is based on substantive and procedural criteria that are . . . substantially below the standards generally accepted in the medical community." (citations & quotation marks omitted) (ellipses in original)); Marisol A. v. Giuliani, 929 F.Supp. 662, 674 (S.D.N.Y. 1996) (holding that substantive due process protects not only from physical harm, but also psychological harm and "unreasonable and unnecessary intrusions into [plaintiff's] emotional well-being."); Camac v. The Long Beach City School District, No. 09 CV 5309 (DRH) (ARL), 2011 WL 3030345, at *13-14 (E.D.N.Y. Jul. 22, 2011) (denying motion to dismiss substantive due process claim based upon defendant's alleged false report and testimony that plaintiff threatened to commit suicide, which resulted in plaintiff's involuntary commitment); West v. Whitehead, No. 04-CV-9283 (KMK), 2008 WL 4201130 (S.D.N.Y. Sep. 11, 2008)

(denying motion for summary judgment and concluding: "Though plaintiff relies largely on circumstantial evidence, the Court finds that a reasonable jury could conclude that Plaintiff suffered conscience-shocking physical *and/or psychological* abuse at the hand of defendant . . . ." [emphasis added]).

Thus, the district court erred in failing to consider the psychological and emotional harm Appellants endured as a result of Ward's relentless spewing of vulgarities at them, demeaning and berating them and degrading their moral standards by instructing them to engage in unethical and unsportsmanlike conduct against opposing players. Appellants were not paid professional athletes – they were merely children, their minds still growing and developing. Ward was charged with encouraging positive values and, to the extent he could, protecting Appellants' from, not subjecting them to, physical and emotional harm. But instead, he misused his authority and created a hostile environment of fear, ridicule and intimidation that had lasting negative effects on Appellants. The district court erred in focusing primarily on the physical aspect of Appellants' claims and failing to consider these other significant facts.

In addition, the district court's reference to Ward's "arguable claim that his methods were aimed at coaching football" (JA-55) is erroneous because it ignores the appropriate standard of review. Indeed, the complaint alleges that, in fact, Ward's conduct was *not* aimed at coaching football, and the fact that the district

court used the term "arguable," demonstrates that a reasonable jury could disagree with the court's interpretation and accept Appellant's contrary allegations. Accordingly, the district court's resolution of this fact dispute was inappropriate.

The district court's errors are further evidenced by its reliance upon distinguishable cases focusing on single or episodic instances as opposed to the relentless pattern of egregious behavior at issue in this case. For instance, the district court relied upon Faccio v. Eggleston, No. 10-CV-783, 2011 WL 3666588 (N.D.N.Y. Aug. 22, 2011) for the proposition that "the mere use of offensive language does not constitute a constitutional violation" and that mere spitting in a plaintiff's face does not violate due process (JA-55). But Faccio involved a single student and single, episodic acts of misconduct committed by five different adults, not a pattern of sustained abuse and physical and verbal conduct by the same adult against many students as is alleged here.

Indeed, in Faccio, the single instances of brutish conduct by an adult did not make out the pattern of conscience shocking behavior which violates the due process clause. By contrast, in this case, Ward engaged in a several year process of behavior which is incomparable to that considered in Faccio: he encouraged his players to psychically injure opposing players; he routinely directed vulgar and sexist language at his team in an effort to intimidate and ridicule his players, including Appellants; he subjected players, including several Appellants, to physical abuse, which

promoted no justifiable governmental interest; he threatened his players with verbal and physical abuse, creating an environment which reasonably caused players to separate from the team.

Moreover, <u>Faccio's</u> precedential value with respect to the propositions for which the district court cited it is questionable at best.  For instance, in support of its conclusion that "verbal abuse alone is not normally a constitutional violation," <u>Faccio</u> cites only an Eighth Circuit and Middle District of Florida case, neither of which are binding on this Court. <u>See</u> 2011 WL 3666588 at *12.  And to support is conclusion that "spitting has not been deemed to be a constitutional violation," <u>Faccio</u> cites only an Eighth Amendment prison case and, as if to equate a high school student with a prisoner, notes "[t]here is no case law suggesting that spitting on a student is the type of behavior that would shock the conscience." <u>Id.</u>

In any event, as already discussed, Appellants' claims here do not entail just the "mere use of offensive language" (JA-55) or sporadic incidents of spitting, but rather a years-long pattern and practice of verbal and emotional abuse, threats and intimidation, as well as instances of unjustifiable physical menacing, that shock the conscience.

The district court also erred in relying upon this Court's decision in <u>Smith v. Half Hollow Hills Central School District</u>, 298 F.3d 168 (2d Cir. 2002).  In that case, this Court held that a science teacher's single, unjustified slapping of a seventh grade

30

student did not shock the conscience. Id. at 172-73.    In doing so, the court emphasized it was not endorsing or adopting a *per se* rule that a single slap could never violate due process. Id.

But in relying upon Smith, and concluding that the physical conduct alleged herein "appears less violent than the conduct in Smith" (JA-56), the district court again improperly compared a single incident to the egregious and prolonged pattern of abuse alleged here.  Moreover, the court erred in focusing on the level of physical conduct as opposed to viewing the totality of Ward's abusive behavior toward his team generally and Appellants specifically.  Indeed, by so heavily relying upon the facts of Smith, the district court failed to consider the totality of circumstances and to appreciate the highly fact intensive inquiry involved in the requisite analysis. See County of Sacramento, 523 U.S. at 850.

The district court next cited Johnson v. Newburgh Enlarged Central School District, 239 F.3d 246 (2d Cir. 2001) and concluded that "Ward's conduct in touching his players was not so brutal and contrary to human dignity as to amount to a constitutional violation.  Plaintiffs do not allege that he caused any injury or physical pain, and the acts alleged were not done sadistically for the purpose of causing harm" (JA-57).  But this reliance was improper for at least two reasons.

First, as is the theme of its ruling, the district court improperly elevated the importance of physical harm – indeed, Johnson involved an excessive force claim,

31

which this case does not.  And second, its reliance involves a misinterpretation of

Johnson.  In evaluating plaintiff's claim in that case, this Court noted a number of

factors for the court to consider, including:

> The need for the application of force, the relationship
> between the need and the amount of force that was used,
> the extent of injury inflicted, and whether force was
> applied in a good faith effort to maintain or restore
> discipline or maliciously and sadistically for the very
> purpose of causing harm

Id. at 251-52 (citations & quotations omitted).  It then explained:

> With respect to the last factor, if the force was
> "maliciously or sadistically employed for the very purpose
> of causing harm in the absence of any legitimate
> governmental objective and it results in substantial
> emotional suffering or physical injury, then the conduct is
> *presumptively unconstitutional.*

Id. at 252 (citations and quotations omitted) (alterations accepted) (emphasis added).

Thus, based on the extreme violence of the attack in that case, this Court "*easily*

[found] the alleged assault to be conscience shocking . . . ." See Id. (emphasis added).

But just because such severe violence of the kind at issue in Johnson creates

a "presumption" of unconstitutionality that "easily" permits the court to find a due

process violation does not necessarily mean that anything less violent may not be

found by a reasonable jury to be conscience shocking, even if such a conclusion is

not as easily reached.  Indeed, a reasonable jury could find that the egregiousness of

Ward's overall and cumulative pattern of behavior toward his minor players,

32

including Appellants, is as conscience shocking as the single violent assault committed by the coach in Johnson.

The district court's reliance upon Bisagnano v. Harrison Central School District, 113 F.Supp.2d 591 (S.D.N.Y. 2000) is also misplaced (JA-57). In that case, the plaintiff, an eighth grade student, brought an excessive force claim against her gym teacher, alleging that, in his attempt to collect a twenty-dollar bill from plaintiff that she found on the floor during class and which he claimed was his, the gym teacher "gave her 'a little push' into an equipment closet," blocked her exit therefrom for about thirty seconds and, once she exited, "grabbed and twisted her left wrist" and then "grabbed her upper right arm." Id. at 593-94. The district court held that, even if accepted as true, the gym teacher's conduct as alleged in plaintiff's complaint was not conscience shocking and did not violate plaintiffs' due process rights.

Like Smith, that case involved a single incident, not an egregious and prolonged pattern of behavior as alleged here. And, like Johnson, Bisagnano involved an excessive force claim; yet, this case involves more than just Ward's unwarranted physical force against Appellants, but also his relentless intimidation, demoralization and verbal and psychological abuse.

Finally, the district court cited Perrin v. Canandaigua City School District, No. 08-CV-6153L, 2008 WL 5054241 (W.D.N.Y. Nov. 21, 2008) (JA-57). There, the plaintiff, an asthmatic, alleged that, during a wrestling match at which he attempted

33

to call a timeout because he was having difficulty breathing, his coach "called [him] a pussy and ordered him to get his ass back on the mat and continue the match." Id. at *1.  Obeying his coach's instructions, the plaintiff then suffered a full-blown asthma attack and, after the match and having "exchanged words" with his coach, the coach "pulled [plaintiff's] arms behind his back, forced him through the door to the locker room and started to punch and poke him in the chest while berating him with the use of foul, profane and demeaning language." Id.

Describing a continuum of force ranging from, on the one hand, the single slap involved in Smith, which this Court found not conscience shocking, to the violent assault involved in Johnson, which this Court easily found to be conscience shocking, the Perrin court held, as a matter of law, that the gym teacher's use of force fell closer to Smith. See Id. at *3-4.

But this Court need not accept Perrin's holding and, indeed, we submit it was erroneous.[4]  And, in any event, Perrin is sufficiently distinguishable from the instant case in that at involved only a single incident, as opposed to the prolonged pattern of egregious conduct involved herein.

––––––––––––––––––––

[4] Notably, as the district court there explained, the plaintiff in Perrin, despite three separate notices from the court, failed to respond to defendants' motions to dismiss and, thus, the court treated the motions as unopposed and granted them on that ground alone. See Perrin, 2008 WL 5054241 at *1.  Accordingly, its entire discussion of the merits of plaintiff's claim was academic and merely dicta.

Finally, the district court below erred in rejecting Appellant's analogy to hostile work environment claims for purposes of evaluating their substantive due process claims (JA-58-59). In doing so, the district court concluded:

> The standards employed in Title VII cases are different from the standards in substantive due process cases, and plaintiffs have not pointed to any case law that permits the Court to find that defendants created a generally hostile environment that violated the plaintiffs' constitutional rights under the due process clause. Plaintiffs have also failed to explain how the Court would undertake an analysis of the ways that their rights were violated using this framework imported from Title VII. Title VII addresses discrimination, after all, not conduct that shocks the conscience, and no plaintiff in the Title VII context must prove that they suffered from such conduct. Because these standards are distinct, the framework articulated in the Title VII context is inappropriate here.

(JA-58-59). But the district court's conclusion is flawed in many ways.

First, the district court focusses on the origin of hostile work environment claims in Title VII cases, but such claims are also actionable under the Equal Protection Clause of the Fourteenth Amendment. See Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006). To be sure, even when pursued under the equal protection clause, hostile work environment claims ultimately involve discrimination in the terms and conditions of employment. But, at bottom, the equal protection clause seeks to end all arbitrary and invidious discrimination by the states. See Loving v. Virginia, 388 U.S. 1, 10 (1967). Thus, to the extent the substantive due process

35

clause proscribes constitutionally arbitrary conduct, analogizing the same to claims of discrimination under the equal protection clause, which similarly involve such arbitrary conduct – *i.e.*, discrimination on the basis of a protected-class status – is not inappropriate.

Moreover, the standard applied to a hostile work environment claim is relevant to that applied to a substantive due process claim. The question in such cases is whether a "workplace is permeated with discriminatory intimidation, ridicule, and insult [based on a protected class] that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . ," Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993).

Since such severe or pervasive intimidation or ridicule amounts to arbitrary discrimination that, at least when meted out by a public employer, violates the equal protection clause, the analysis is similar to that involved in a substantive due process claim – *i.e.*, determining whether an official's conduct is "arbitrary, or conscience shocking, in a constitutional sense," County of Sacramento, 523 U.S. at 847, because, for instance, it is "intended to injure in some way unjustifiable by an government interest . . . ," Id. at 848. Moreover, in both contexts, courts are required to determine the objective egregiousness of a defendant's conduct and are urged to consider the totality of the facts.

36

In hostile work environment cases, courts are urged to "focus[] on the nature of the workplace environment as a whole, and a plaintiff who herself experiences discriminatory harassment need not be the target of other instances of hostility in order for those incidents to support her claim." See Kaytor v. Electric Boat Corp., 609 F.3d 537, 547 (2d Cir. 2010) (citations & quotations omitted) (emphases deleted).  In light of the similarity in analysis, it stands to reason that a court may consider the nature of an environment created by a substantive due process defendant like Ward here, and that a plaintiff need not personally experience all of the defendant's conduct for such conduct to support his claim.  In the end, it is the creation of the abusive environment through a pattern of egregious behavior and the deleterious effects of that environment on the plaintiff that is conscience shocking.

Applying this framework here, Ward's conduct toward his team generally and players other than Appellants should be considered in determining whether he violated Appellant's substantive due process rights.  Indeed, to the extent the complaint makes allegations about Ward's conduct toward the team generally, such conduct *was* aimed at Appellants because they were part of the team.  And, to the extent it alleges conduct aimed at other players, Appellant's observed or were otherwise aware of such conduct, and so it informed and contributed to the intimidation and ridicule to which Ward subjected Appellants.  Accordingly, the district court erred in failing to consider these allegations.

## CONCLUSION

Over the course of several years, Ward subjected Appellants to an egregious and outrageous pattern of intimidation, ridicule, physical and verbal abuse and psychological and emotional harm. A reasonable jury could find that his conduct shocks the conscience. Accordingly, this Court should, respectfully, reverse and vacate the district court's judgment and remand the matter for trial.

Dated:      Goshen, New York
             July 8, 2014                Respectfully submitted,

                                          SUSSMAN AND WATKINS
                                          *Attorneys for Plaintiffs-Appellants*

                                          By: _____
                                              Michael H. Sussman
                                            P.O. Box 1005
                                            1 Railroad Avenue, Ste. 3
                                            Goshen, New York 10924
                                            (845) 294-3991
                                            sussman1@frontiernet.net

TO:   April J. Laws, Esq.
       LEMIRE JOHNSON, LLC
       2534 Route 9
       P.O. Box 2485
       Malta, New York 12020
       (518) 899-5700
       ajl@lemirejohnsonlaw.com

**CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 8,913 words, excluding those parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I hereby certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in Time New Roman 14-point type for text and footnotes.

Dated:     Goshen, NY
          July 8, 2014

                              _____
                              MICHAEL H. SUSSMAN